ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:17CR542 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| KOLADE AWOYADE, | ) | |
| | ) | ORDER |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant's motion for compassionate release. The motion is DENIED.

Within the COVID-19 backdrop, the Sixth Circuit has recently explained this Court's duties and obligations when considering a motion for compassionate release.

> Sections 3582(c)(1)'s and (c)(2)'s parallel language and structure compel us to conclude that compassionate release hearings are sentence-modification proceedings and that courts considering motions filed under § 3582(c)(1) must follow a *Dillon*-style test. The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[ (1)(A) ] instructs a court to

> consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020)(citations and footnotes omitted). However, "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111.[1]

    I.    § 3553(a) Factors

        a. Standard

As noted above, this Court may "not modify a term of imprisonment once it has been imposed" unless specifically authorized to do so by section 3582(c). This Court may grant compassionate release if, after considering the factors in 18 U.S.C. § 3553(a), it determines that "extraordinary and compelling reasons" warrant a reduced sentence and that "such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A)(i). For ease of reference, the § 3553 factors are as follows:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

---

[1] For the purposes of this motion, the Court will assume for the sake of argument that the Covid-19 pandemic and the conditions it has created within the prison at issue are extraordinary and compelling reasons sufficient to satisfy step two.

2

>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>  (B) to afford adequate deterrence to criminal conduct;
>
>  (C) to protect the public from further crimes of the defendant; and
>
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>  (3) the kinds of sentences available;
>
>  (4) the kinds of sentence and the sentencing range established for—
>
>  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

18 U.S.C.A. § 3553.

The Sixth Circuit has noted that "District judges maintain an obligation to provide reasons" when resolving motions for compassionate release. *Jones*, 980 F.3d at 1112.

> We start by requiring a thorough factual record for our review: district courts must supply specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its compassionate release decision. We look at the whole record in sentence-modification proceedings, including the records from the original sentencing, records on the modification motion, and the final compassionate release decision.

*Id.* (citations, quotations, and alterations omitted).

### b. Analysis

Defendant Kolade Awoyade filed his motion pro se (Doc. 94), supplemented the motion pro se (Doc. 95), and appointed counsel supplemented the motion. Doc. 97. Each request focuses upon Awoyade's age, 51, and his status as a Type II diabetic in support of his release. However, the filings before this Court wholly ignore the nature and circumstances of Awoyade's

3

offense and his own history and characteristics.

Defendant Kolade Awoyade, who is co-defendant Gwendolyn DuBose's husband, was employed as a head teller at the Greater Abyssinia Federal Credit Union from 2011 through approximately December 1, 2015. Some of his job duties included processing loan payments for members; processing daily transactions for members to include, but not limited to, deposits, withdrawals, loan payments, and transfers; preparing and balancing drawers at the end of each shift; and opening and closing the credit union. From about 2012 through November 2015, DuBose and Awoyade intentionally embezzled and misapplied approximately $191,978.40 belonging to GAFCU, as DuBose drafted and deposited checks in order to benefit herself and Awoyade. DuBose transferred money to personal accounts held at GAFCU and Key Bank for personal use, and she also transferred money from GAFCU member share accounts to nominee accounts to use for personal use. She made unauthorized purchases by debit cards for personal use from GAFCU'S Fifth Third bank account. In what he deemed his acceptance of responsibility, Awoyade effectively blamed poor luck for his choice to embezzle nearly half the assets held by GAFCU. He detailed at length his past job history and what he believed was unfair treatment at a prior occupation. Awoyade noted: "I became depressed and self-loathing as a man and fell on hard times. All the while falling behind in my child support obligations and missing my children. This is when I began to embezzle from the credit union from 2013-2014." Doc. 48 at 9.

In making such an assertion, Awoyade ignores that this was not his first foray into embezzlement. In 1998, he was convicted of bank embezzlement and received only probation. His probation was extended for a year when he committed domestic battery and failed to disclose

4

this new criminal conduct to his probation officer. Awoyade's domestic battery on his then-wife was described as follows:

> The victim, Alexis Scott, advised the officer she contacted her husband, Kolade Awoyade, while he was at church after she located pictures of another woman on his computer. She stated when her husband came home, he yelled at her for calling him during church and then jumped on top of her and threw her to the floor. Ms. Scott stated the defendant put her in a choke hold and threatened to kill her if she took his son away from him. According to Ms. Scott, she tried to get away, but the defendant pushed her back to the floor, bending her right arm behind her back and choking her. She advised the defendant "kneed" her in the stomach, and she begged him not to hurt the baby, as she was three months pregnant at the time. Ms. Scott told the officer the defendant continued to throw her around, and she was eventually able to get away and call 911.

Doc. 48 at 12.

An analysis of the § 3553(a) factors compels the Court to deny Awoyade's motion for compassionate release. First, Awoyade's criminal history, although brief, shows his willingness to return to criminal conduct when he believes it necessary to improve his lot in life. Despite a 1998 conviction for embezzlement, when money struggles returned, Awoyade returned to embezzling money. However, on this occasion, Awoyade expanded his crime to include aggravated identity theft. In that regard, Awoyade has barely served the mandatory 24-month sentence that resulted from the identity theft. An early release would effectively mean that Awoyade served no time at all for the underlying embezzlement offense. Given his propensity to re-offend, Awoyade must continue to serve his sentence to deter him from future misconduct.

Moreover, while previously on federal supervision, Awoyade choked and threatened to kill his then-pregnant wife, including striking her in her stomach. As such, he does not present as a proper candidate for home confinement.

Based upon a review of the totality of the factors listed in § 3553(a), the Court hereby DENIES Awoyade's motion for compassionate release along with both his supplements.

IT IS SO ORDERED.


January 6, 2021                                                /s/John R. Adams
Date                                                      JOHN R. ADAMS
                                                              UNITED STATES DISTRICT JUDGE